N. T. HORTON *vs.* R. R. McCALL.

An execution debtor is entitled to a PERSONAL PROPERTY EXEMPTION, notwithstanding an execution, issued against his property, bore *teste*, before the adoption of the Constitution, if there was no levy, made until after.

The cases of *Hill* v. *Kesler*, 63 N. C., 437, and *McKeithan* v. *Terry*, 64 N. C., 25, *Harding* v. *Spivey*, 8 Ired, 63, and *Jones* v. *Judkins*, 4 Dev. & Bat. 456, cited and approved.

This was a civil action, tried before His Honor, Judge Mitchell, and a jury, at Fall Term 1871, of Caldwell Superior Court.

The plaintiff complained against the defendant, who is Sheriff of Caldwell county, *in trover*, for the conversion of certain personal property, which was ascertained to be the plaintiff's personal property exemption, unless the defendant, who, answered "justification under legal process," could sustain such defence, under the following state of facts : At Spring Term 1867, one Gilbert obtained judgment against the defendant, in the Superior Court of Caldwell, and caused a *fi fa*, to issue to 'Fall Term 1867 ; from that term, an *alias* issued to Spring Term, 1868 ; from that term a *pluries*, issued to Fall Term 1868, tested of Spring Term 1868 ; from that

term, another *pluries*, to Spring Term 1869 ; all of which bore *teste* of the next preceding term, to that to which, they were made returnable ; under the last *fi fa*, the property, for the conversion of which this action was brought, was levied on and sold by the defendant, as Sheriff.

A verdict was taken, with leave to set it aside, &c. His Honor, on consideration, being of opinion with the plaintiff, rendered judgment on the verdict, and the defendant appealed.

*Folk* for the plaintiff.

In the case of *McKeithan* v. *Terry*, 64 *N. C. Rep.*, *p.* 25, the *fi fa* had been levied on land, and returned, before the adoption of the State Constitution. The Court said, by this levy, the plaintiff acquired a specific " lien," " a vested right." The lien referred to, in that case, was not acquired by the levy simply, but by the *fi fa*, levy, and return of the *fi fa*. *Judge* v. *Houston*, 12 Ired. Rep., 113. *Gilkey* v. *Dickerson*, 2 *Hawks*, 390. But though the lien, created on land, by a *fi fa*, from its *teste*, is not changed by a levy alone, its effect is very different with regard to chattels. By a levy, the property, in chattels, is divested out of the defendant, and vested in the Sheriff, and the execution satisfied, to the value of the property, unless it is returned to the defendant. If the Sheriff, after levy and before sale, goes out of office, he must, nevertheless, sell the property ; if he dies, it goes by succession to his personal representatives. This is nothing less than a vested right of property, not at all like the lien on lands, created by the levy of a *fi fa*, and its return. It is also insisted, that the lien created on chattels, by a *fi fa*, before levy, is a vested right. This depends on the nature of the lien, its strength and efficacy. Liens proper, at common law, depend on possession ; if the possession is surrendered, the lien is gone. The lien, by execution, operates without possession, and is available, by way of charge, and not detention ; it binds property

from its *teste*, and the lien is continued, if regular *alias*, and *pluries fi fas*, are issued. It passes, with an assignment of the judgment to the assignee, or, upon the death of the plaintiff, to his executors or administrators. It binds the property of the debtor so as to avoid any alienation by him, after its *teste*.

This is so undoubtedly true, as to require no authority to support it. The cases, however, of *Stamps* v. *Irwin*, 2 *Hawks*, 232. *Finley* v. *Lea*, 2 *Dev. and Bat.*, 169, may be referred to, in which the point was decided in ejectment and trover. If chattels be levied on by a *fi fa*, and then another of prior *teste*, come to the Sheriff's hands, it is his duty to sell and apply the money to that of elder *teste*, although by the levy made under the first, the property was vested in him for its satisfaction. *Green* v. *Johnson*, 2 *Hawks*, 309. Where a *fi fa* issued against one, who was a joint-owner of slaves with others, and afterwards, upon the petition of all the joint-owners, the slaves were directed, by a Court of competent jurisdiction, to be sold for division, and under the order, were sold; it was held, that the lien of the Sheriff was not divested, but he had a right still, to sell the undivided interest of the defendant, in the execution, and although the purchaser had no actual notice of the lien, yet, as to him—*caveat emptor*. *Harding* v. *Spivey*, 8 Ired. Eq., p. 63. The plaintiff then, had acquired a lein from the *teste* of his original *fi fa*, which, neither the alienation of the debtor, the active diligence of others, or the judgment of a Court of record, or anything except his own default and misconduct, could destroy. If this is not a vested right, substantially a right of property, it is because carefully guarded legal defences, do not make one.

Accordingly, it is held by high authority, that a statute, prescribing that a debtor may remove the property on which his creditor has a judgment lien, without rendering the property liable to sale, on execution, is unconstitutional. *Tilloston* v. *Millard*, 7 *Min.*, 513.

*Armfield* for defendant.                                         11

N. T. NORTON *v.* R. R. McCALL.

READE J.   It is settled by a series of decisions, that an exe-cution creates a lien, on both real and personal property, from its *teste.   Harding* v. *Spivy,* 8 Ire. Eq., 63.

It is also settled, that if there is no levy or sale under the first execution, but the same is returned to court, and another is issued upon the same judgment, the lien of this second, re-lates back to the *teste,* of the first.   And so on with any num-ber, regularly and consecutively issued.

But still the question remains what sort of lien is created, and what is its effect ?   It is settled that the lien is such as to prevent the debtor from selling, so as to defeat that debt. *Jones* v. *Judkins,* 4 *D.* & *B.,* 456.

But still it seems to be only a *lien,* and does not divest the title out of the debtor ; nor invest it in the creditor ; nor in the officer.

It would seem, therefore, that the lien does not affect the title, and amounts only to a charge which the law imposes upon the property for the purpose of satisfying its process.   And so it seems that while this lien exists, if the creditor delays to make the lien specific by a levy, (taking hold of the property if it be personalty, or naming and and describing it if it be realty,) and selling it, a junior execution can come in and take the property from under the prior lien and sell it for the satis-faction of the junior. It is true the reason given for this, is, the *delay* of the first creditor, which operates as a fraud upon other creditors ; and therefore the law withdraws the care which it had assumed over, and the charge which it had imposed upon the property in favor of the senior creditor, and transfers them in favor of the junior creditor.   But then, if the senior creditor had any *property* in the goods of the debtor upon which his execution had been a *lien,* the law could not thus transfer his *property* to another.

The question in our case is, whether the homestead and per-sonal property exemption laws, prevent the taking and selling the property of the debtor, which had become subject to the

lien aforesaid, *i. e.*, the lien of an execution tested, but not levied, before the law was passed.

We have already decided, that the debtor's property might be exempted, and that it was exempted by the said laws from liability for any of his debts. But that was upon the ground that *debts* were not liens upon property, either general or specific. *Hill* v. *Kesler.*

But this case differs from that in this: The creditor has taken one step towards subjecting the debtor's property, and although the debtor's property has not been appropriated, or taken hold of, yet it was hedged in, in so far that the debtor himself could not dispose of it so as to defeat that debt; yet, he could use it, and consume it as before, and another more vigilant creditor might take it.

In *McKeithan* v. *Terry*, we decided that where there was a *levy*, it created a specific lien, or vested right, which the homestead law did not interfere with. If we did not go too far, in that case, we are satisfied that we cannot go farther, in favor of the creditor, without doing violence to the Constitution and the act of Assembly. Here there was no levy; and although there was a lien, such as we have described by the execution, from its *teste*, yet it did not divest the property out of the debtor, and was not even specific, as in McKeithan's case, but was general; and, therefore, the property was subject to the exemption laws aforesaid.

THERE IS NO ERROR.                    Affirmed.